[Cite as *In re I.F.*, 2026-Ohio-2445.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| | |
|---|---|
| IN THE MATTER OF: | Case No. 2026CA0041 |
| I.F. | Opinion And Judgment Entry |
| MINOR CHILD | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2023 JCV 01483 |
| | Judgment: Affirmed |
| | Date of Judgment Entry: June 26, 2026 |

**BEFORE:** Andrew J. King; Craig R. Baldwin; Kevin W. Popham, Judges

**APPEARANCES:** NO APPEARANCE for Stark County Department of Job & Family Services, Plaintiff-Appellee; KATHALEEN S. O'BRIEN, for Defendant-Appellant Mother.

*Baldwin, J.*

**{¶1}** J.B., biological mother of minor child I.F., appeals the decision of the trial court granting permanent custody of I.F. to appellee Stark County Department of Job & Family Services (JFS).

**STATEMENT OF FACTS AND THE CASE**

**{¶2}** On December 28, 2023, the appellee filed a Complaint alleging dependency, neglect, and/or abuse of minor child I.F. The Complaint noted that I.F. has four siblings, all of whom were the subjects of contemporaneously filed complaints. The Complaint noted further that the family "has had significant historical involvement with children services." A shelter care hearing was held on December 29, 2023. J.B. was present at the shelter care hearing, at which the appellee presented evidence of J.B.'s history with the

agency, as well as J.B. and her paramour's history of physical abuse and excessive discipline of I.F. The court granted the appellee temporary custody of I.F.

{¶3} The appellee filed a case plan, and the court appointed a Guardian Ad Litem (GAL). The matter was set for an adjudication hearing on January 24, 2024; however, I.F.'s father was not served, and the matter was reset for an evidentiary hearing on March 6, 2024. The evidentiary hearing proceeded as scheduled, at which J.B. and I.F.'s biological father stipulated to a finding of abuse after consultation with their respective counsel.[1]

{¶4} Updated case plans and GAL reports were filed, and multiple dispositional hearings were conducted. The court determined on numerous occasions that reasonable efforts had been made "to prevent the need for placement and/or make it possible for the child(ren) to return home." During a dispositional hearing held on June 13, 2024, I.F.'s case worker testified that J.B. was working on the case plan services and awaiting referral to the Goodwill Parenting Program.

{¶5} Updated case plans and GAL reports were filed periodically, and the appellee filed a motion for judicial determination on placement with a qualified residential treatment program due to I.F.'s behavior.

{¶6} A dispositional hearing was held on November 20, 2024, at which the caseworker testified that I.F. was placed at the residential treatment program due to behavior concerns leading to disruption in five prior placements, and that J.B. was still

---

[1] I.F.'s biological father is currently incarcerated after pleading guilty to felonious assault and domestic violence, and has an expected release date of March 2027. He is not a party to this appeal.

working on the case plan. The appellee had filed a motion for extension of temporary custody, which the court set for hearing.

{¶7} On March 25, 2025, the trial court held a hearing on the appellee's motion to extend temporary custody of I.F. The appellant stipulated to the motion to extend, and the trial court granted it, extending the agency's temporary custody of I.F. until June 28, 2025. Updated GAL reports and case plans were thereafter filed, and the matter remained status quo.

{¶8} On November 26, 2025, the appellee filed a motion for permanent custody of I.F. The motion alleged, inter alia, that the appellee originally became involved with J.B.'s family in 2017. The appellee became involved with J.B. and her children again in 2019, 2021, 2022, and 2023 due to concerns of physical abuse of the children, including I.F. The appellant and her paramour beat the children with a belt as a punishment. An intake worker observed bruises on one of I.F.'s siblings, and reports from the school indicated that one of I.F.'s siblings was unable to sit down in class due to pain following one such beating. All the children, including I.F., stated that they were often beaten with belts, as well as other objects, all over their bodies. One of I.F.'s siblings had a loose tooth from being struck in the face. The resultant injuries to the children, including I.F., were severe. The children, including I.F., were taken to Akron Children's Hospital for assessment, and were diagnosed with suspected child abuse. Police were notified. The Motion for Permanent Custody alleged further that while J.B. had engaged in some elements of her case plan, she had failed to complete the Goodwill Parenting Class (having been dismissed on three different occasions for failure to comply with substance abuse requirements), and had failed numerous drug tests, testing positive for THC and alcohol, which was determined to be a factor in the beatings she gave to her children.

**{¶9}** I.F. had been in the temporary custody of the appellee for 12 of the 22 months preceding the appellee's Motion for Permanent Custody. An updated case plan and GAL report were filed, and the GAL report recommended that I.F. be placed in the permanent custody of the appellee.

**{¶10}** The permanent custody hearing proceeded on February 9, 2026. Counsel was present for the appellee, the appellant, and I.F.'s biological father; in addition, the GAL was present for I.F. The appellee called I.F.'s caseworker Heather Richardson, who testified regarding the appellant's history of physical abuse of her children, including I.F.; her failure to complete mental health services as set forth in her case plan; and, her failure to complete parenting classes with Goodwill as set forth in her case plan. Ms. Richardson testified that the appellant began engaging in dialectical behavioral therapy virtually with Phoenix Rising in May of 2024, several months after the removal of I.F. from the home. The Phoenix Rising reports indicated that the appellant made minimal progress, and attended her appointments virtually and sporadically, only attending them 50% - 66% of the time. In addition, providers indicated concern that the appellant continued to test positive for THC, which ultimately affected the rest of her case plan. Ms. Richardson acknowledged that the use of THC is not illegal; however, the appellant's continued use of a substance that affected her ability to make rational decisions regarding her children, and provide them with appropriate care, were concerning. Ms. Richardson testified that the appellant had 8 employers throughout the life of the case, and had failed the Goodwill Parenting Class 3 different times. Ms. Richardson testified that she worked with the appellant throughout the entire case, and while the appellant talked about her sessions in a positive manner the records revealed minimal participation and minimal progress. The appellant had supervised visits with I.F. throughout the case, which reportedly went well.

{¶11} Michael Stranathan, a psychological assistant with Summit Psychological Associates, testified regarding his parenting evaluation of the appellant. Mr. Stranathan testified that he had a number of concerns regarding the appellant and her ability to parent. In particular, he testified that the appellant exhibited several maladaptive traits associated with borderline personality disorder, the features of which are problems with mood management. He testified that individuals with such traits are frequently emotionally overreactive; react in way that are disproportionate to the situation; have impaired relationships due to paranoid thinking; tend to believe that individuals are working against them; tend to be impulsive; engage in substance abuse or other impulsive behaviors; tend to have poor boundaries with their children; and, may overreact to situations and engage in abusive methods of punishment.

{¶12} The parties called no further witnesses, and presented closing arguments. The trial court issued its decision on February 10, 2026, breaking it into two parts: first, permanency; and second, best interest of I.F. With regard to permanency, the court found, inter alia, that the appellant had "failed continuously and repeatedly to substantially remedy the conditions that caused [I.F.] to be placed outside of the home"; that I.F. had been in the temporary custody of the appellee for 12 or more months of a consecutive 22-month period; and, that there was clear and convincing evidence that I.F. could not be placed with either parent within a reasonable time. With regard to I.F.'s best interest, the court found that the harm caused by severing the parental bond was outweighed by the benefits of permanence in I.F.'s life; that I.F. is adoptable; and, that because I.F. deserves to be in a safe, stable, loving environment, granting permanent custody of I.F. to the appellee is in his best interest.

{¶13} The appellant filed a timely appeal, and sets forth the following two assignments of error:

{¶14} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶15} "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶16} The appellant submits that the trial court erred when it granted permanent custody of I.F. to the appellee. Despite the fact that the appellee failed to file an appellate brief herein, we disagree with the appellant and affirm the decision of the trial court.

## STANDARD OF REVIEW

{¶17} The Ohio Supreme Court addressed the standard of review in permanent custody cases in the case of *In re Z.C.*, 2023-Ohio-4703:

> Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, "by clear and convincing evidence, that it is in the best interest of the child" to do so and that any of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. "Clear and convincing evidence is

that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

We have described an appellate court's task when reviewing a trial court's application of the clear-and-convincing-evidence burden of proof as follows: "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990), citing *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526 (1887), paragraph two of the syllabus; *accord Cross* at 477, 120 N.E.2d 118.

\* \* \*

. . . sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties.

*Id*. at ¶7-8, 11.

The Court went on to define sufficiency of the evidence and manifest weight as follows:

Sufficiency of the evidence and manifest weight of the evidence are distinct concepts and are " 'both quantitatively and qualitatively different.'

" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. We have stated that "sufficiency is a test of adequacy," *Thompkins* at 386, 678 N.E.2d 541, while weight of the evidence " 'is not a question of mathematics, but depends on its *effect in inducing belief* " (emphasis sic), *id.* at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* at 386, 678 N.E.2d 541. "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when " 'the evidence is legally sufficient to support the jury verdict as a matter of law." ' " *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶ 3, quoting *Thompkins* at 386, 678 N.E.2d 541, quoting *Black's* at 1433.

But "even if a trial court judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *Eastley* at ¶ 12. When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the

knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). " 'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 13-14.

## ANALYSIS

**{¶18}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶19}** R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of a child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency; and, that any of the following apply:

(a)    The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one

or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶20} R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. In this case, the trial court found, inter alia, that R.C.

2151.414(B)(1)(d) factors applied. I.F. had been in the temporary custody of the appellee for more than twelve months of a twenty-two month period.

**{¶21}** The court must also consider all relevant evidence before determining that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also provides that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine whether the child cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re William S.*, 75 Ohio St.3d 95, 99, 1996-Ohio-182, 661 N.E.2d 738.

**{¶22}** R.C. 2151.414(E) states in pertinent part:

In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1)     Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2)     Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3)     The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

*       *       *

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

\* \* \*

(16) Any other factor the court considers relevant.

**{¶23}** In this case, the evidence demonstrated that the appellant had exhibited a long-standing pattern of physical abuse and excessive discipline of her children, including I.F.; and, that she failed to address the conditions that led to the removal of I.F. from her home. The evidence demonstrated further that I.F. could not be placed with the appellant, nor with his imprisoned biological father, within a reasonable time, and should not be placed with either parent. Further, the evidence established that the child had been in the temporary custody of the appellee for more than twelve consecutive months of a twenty-two month period.

**{¶24}** The trial court found by clear and convincing evidence that, while the appellant made some efforts to engage in the case plan, she failed continuously and repeatedly to substantially remedy the conditions that caused I.F. to be placed outside the home. Further, the appellant's mental health and alcohol and marijuana use (which impacted her lack of impulsivity control), and her severe beatings of I.F., is so severe that it renders her unable to provide an adequate permanent home for I.F. While she may have engaged in some services offered, she failed to successfully complete substance abuse

programs, failed to avail herself of mental health services, and failed to complete Goodwill Parenting Classes as required by her case plan.

## CONCLUSION

**{¶25}** Based upon the foregoing, we find that the trial court's decision to award permanent custody of I.F. to appellee Stark County Department of Job & Family Services was warranted, was in the best interest of I.F., was based upon competent, credible evidence, and was not against the manifest weight or sufficiency of the evidence. The evidence contained in the record supports the trial court's judgment. We therefore overrule the appellants' assignments of error numbers one and two, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.

**{¶26}** Costs to Appellant.

By: Baldwin, J.

King, P.J. and

Popham, J. concur.